**FEE PAID**

FILED
CLERK, U.S. DISTRICT COURT

DEC 11 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RS _____ DEPUTY

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

for the

Central District of California

_____Western_____ Division

|  |  |
|---|---|
| PAUL RYAN BAROUS | ) Case No. **2:18-CV-10261-DSF-DFMx** |
| | ) |
| | ) *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) |
| -v- | ) |
| ARIEL Z. EMANUEL | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) |

## COMPLAINT AND REQUEST FOR INJUNCTION

I.      **The Parties to This Complaint**

    A.      **The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Paul Ryan Barous Pro-Se |
| Street Address | 98 Central St |
| City and County | Andover, Essex |
| State and Zip Code | Massachusetts 01810 |
| Telephone Number | 949-338-5039 |
| E-mail Address | rrssolution@earthlink.net |

    B.      **The Defendant(s)**

        Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

RECEIVED
CLERK, U.S. DISTRICT COURT

DEC - 6 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

Defendant No. 1

    Name                          Ariel Z. Emanuel (individual at a place of business)

    Job or Title *(if known)*     CEO Of Endeavor LLC

    Street Address           9601 Wilshire Blvd

    City and County         Beverly Hills   Los Angeles

    State and Zip Code      California 90210

    Telephone Number       310-285-9000

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

28 U.S.C. 1332; Diversity of Citizenship in a breach of contract dispute. For Venue; 28 USC 1391(b)(2) when diversity of citizenship and where a substantial part of events happened giving rise to claim. As well 28 U.S.C. (a)(2) - proper venue without regard to weather action is local or transatory in nature.

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

a.     If the plaintiff is an individual

The plaintiff, *(name)* Paul Ryan Barous                     , is a citizen of the State of *(name)* Massachusetts                     .

b.     If the plaintiff is a corporation

The plaintiff, *(name)*                     , is incorporated under the laws of the State of *(name)*                     ,

and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

a.     If the defendant is an individual

The defendant, *(name)* Ariel Z Emanuel                     , is a citizen of the State of *(name)* California                     . Or is a citizen of *(foreign nation)*

_____ .

    b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

23% value of defendants Personal equity and or private shares of Endeavor LLC is much more. Endeavor LLC is valued at 6.3 billion. Though, leaving 2% of private shares/equity to defendant leaves 21% value of 6.3 billion. This is $1,323,000,000. Combination of private shares and cash. Though Plaintiff gets to keep 2% ownership in patent 9489681 that will be exchanged.

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

Majority in Los Angeles. Breach of Contract for not settling. As well there is a related case from the California Central District of California Southern division. Barous v NSA/CSS. Dismissed for categorization of Top Secret and Covert. Case # SA CV 8:14-cv-00698-CJC-JCG. Defamation of character as well through, slander. Defendant spread false and extremely damaging PR about Plaintiff physically abusing women. Professionaly and personally crippling.

B.    What date and approximate time did the events giving rise to your claim(s) occur?

Approximately "starting" between 2002 -2004, ( being safe on exact year, hence the lost "written contract") on going in sporatic interludes, social and entertainment industry work duties  and ending November 8, 2016 ( legal happening date of patent issuing). Though, still going on because defendant will not settle. Again, Plaintiff misplaced contract, though he has individuals that acted in a proxy capacity and a witness in regards to defendants initiated verbal contract over the phone and the next day this  was put into a  "written contract" and signed by Plaintiff with Mr. Whitesell ( now chairman of Endeavor, LLC) witnessing this signature. Mr. Emanuel is now CEO of Endeavor LLC. 4 yr window on filing for written contracts

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

C.    What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

There are individuals that acted in a proxy manner (Olivia Munn) and witness (Lisa Harrison) on the defendants initiated phone call to Plaintiff presenting this contract the day before the "written" contract. The next day at the "written contract" signing, defendants business partner( Mr. Patrick Whitesell) ( now executive chairman of Endeavor LLC) was present. There are other entertainment industry  individuals that are aware of this contract: Best truthful recall. A consideration of approx. $38,000 for signing bonus and same salary for agent in training position and give up 51% of patent application to defendant. This or a co-agent would handle what would have been my book.  If Plaintiffs patent application did not issue Plaintiff got nothing. If it issued Plaintiff would get the book or defendants stake in his business.(which ever was more). There was a $1,000,000 total buyout of the patent application option. Patent issued November 8 2016. Plaintiff duties performed for book are industry  trade secrets.

## IV.    Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

It has been approximately 15 yrs of many emotional and financial difficulties for the Plaintiff over these years because of actions of the defendant towards Plaintiff.  Now, defendant refusing to settle adds on to this damage and establishes a breach of contract.   Plaintiff is out of time on many levels. Defendant spread false and damaging PR that Plaintiff physically abused women, which heavily influenced an extreme compounded loss of business and strong negative public opinion towards Plaintiff. Plaintiff will never regain reputation and has a right  to reap what he sowed and create new career goals.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Defendants Private equity stock and cash in Endeavor LLC.   Defendants 21% - 23% value ownership in Endeavor LLC, valued at 6.3 billion.  So, $1,323,000,000 minimum value which includes all defendants remaining private stock and the remainder in cash. Breach of Contract is still going on from the legal happening date of Plaintiffs patent 9489681 issuing on November 8 2016. This is what the written contract established.  This is to the best recollection for total recall.  Obviously the defedant would get the Plaintiffs patent in exchange. Any extra the Court sees fit. (PRB)

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   11/28/2018

Signature of Plaintiff

Printed Name of Plaintiff    Paul Ryan Barous - Pro Se

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# EXHIBITS A-C

**EXHIBIT A** -  Plaintiffs Issued Patent (Legal happening date)

**EXHIBIT B** – Related Cases Notice and Discloser (Affidavit form David Sherman of the NSA). Stating Top Secret and Covert. Enough related to give full discloser, not all but enough for sure. SA CV 8:14- CV- 00698- CJC- JCG

**EXHIBIT C** – General Order Notice and Discloser For Direct Assignment of Civil Cases to Magistrate Judges GO #12 - 02

US009489681B2

(12) **United States Patent**

Barous

(10) Patent No.: **US 9,489,681 B2**

(45) **Date of Patent:** **Nov. 8, 2016**

(54) **SYSTEMS AND METHODS FOR DISTRIBUTING COUPONS**

(76) Inventor: **Paul R. Barous**, Laguna Niguel, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 97 days.

(21) Appl. No.: **10/397,778**

(22) Filed: **Mar. 25, 2003**

(65) **Prior Publication Data**

US 2004/0044573 A1 Mar. 4, 2004

**Related U.S. Application Data**

(60) Provisional application No. 60/406,389, filed on Aug. 27, 2002.

(51) **Int. Cl.**
*G06Q 30/00* (2012.01)
*G06Q 30/02* (2012.01)

(52) **U.S. Cl.**
CPC .......... *G06Q 30/0239* (2013.01); *G06Q 30/02* (2013.01)

(58) **Field of Classification Search**
CPC ................................................. G06Q 30/0207
USPC ............................................................. 705/14
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,804,323 A | 4/1974 | Bemel | |
| 4,674,041 A * | 6/1987 | Lemon et al. | 705/14.35 |
| 4,723,212 A | 2/1988 | Mindrum et al. | |
| 4,825,045 A | 4/1989 | Humble | |
| 4,833,308 A | 5/1989 | Humble | |
| 4,949,256 A | 8/1990 | Humble | |

| | | | |
|---|---|---|---|
| 5,134,716 A * | 7/1992 | Craig | 455/66.1 |
| 5,249,044 A | 9/1993 | Von Kohorn | |
| 5,537,314 A | 7/1996 | Kanter | |
| 5,557,721 A | 9/1996 | Fite et al. | |
| 5,612,527 A | 3/1997 | Ovadia | |
| 5,612,868 A | 3/1997 | Off et al. | |
| 5,620,061 A * | 4/1997 | Fraser | 186/68 |
| 5,701,694 A | 12/1997 | Atkinson | |
| 5,761,601 A * | 6/1998 | Nemirofsky et al. | 725/34 |
| 5,761,648 A | 6/1998 | Golden et al. | |
| 5,794,210 A * | 8/1998 | Goldhaber et al. | 705/14 |
| 5,845,259 A | 12/1998 | West et al. | |
| RE36,116 E | 2/1999 | McCarthy | |
| 5,870,718 A | 2/1999 | Spector | |
| 5,923,016 A | 7/1999 | Fredregill et al. | |
| 6,052,629 A * | 4/2000 | Leatherman et al. | 700/241 |
| 6,076,068 A | 6/2000 | DeLapa et al. | |

(Continued)

*Primary Examiner* — Matthew L Hamilton
(74) *Attorney, Agent, or Firm* — Coats and Bennett PLLC

(57) **ABSTRACT**

The present invention provides systems and methods for distributing coupons by a retailer. The coupons distributed in the invention are "third-party" coupons, that is, coupons for goods or services that are unrelated to those of the retailer and offered by a third-party retailer. For example, if the coupons are being distributed by a supermarket, then the coupons may be for tools at a home-improvement store or for tax services by an accountant. The distribution methods of the invention increases the revenue of a retailer. More specifically, a consumer is presented a coupon when the value of the transaction exceeds a threshold. In a number of embodiments, the threshold is the average sale per transaction of the retailer. Accordingly, consumers will be motivated to increase spending so that coupons can be earned. The methods and apparatus of the invention are equally applicable to both "brick and mortar" and "click and mortar" retailing. In the latter, consumers may shop on the Internet and print out coupons during checkout if the threshold for a particular website is met.

**39 Claims, 6 Drawing Sheets**





# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL RYAN BAROUS )<br><br>Plaintiff, )<br><br>v. )<br><br>NSA/CSS, *et al.*, )<br><br>Defendants. ) | Civil Action No. 8:14-cv-698-CJC-JCG |

## DECLARATION OF DAVID J. SHERMAN

I, DAVID J. SHERMAN, hereby declare and state:

1. I am the Associate Director for Policy and Records at the National Security Agency ("NSA" or "Agency"), an intelligence agency within the Department of Defense. I have been employed with NSA since 1985. Prior to my current assignment, I held various senior and supervisory positions at NSA and elsewhere in the Executive Branch, to include serving as the Deputy Chief of Staff in the Agency's Signals Intelligence Directorate, its representative to the Department of Defense, Deputy Associate Director for Foreign Affairs, and Director for Intelligence Programs at the National Security Council. As the Associate Director for Policy and Records, I am responsible for, among other things, the processing of all requests made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for NSA records.

2. In addition, I am a TOP SECRET classification authority pursuant to Section 1.3 of Executive Order ("E.O.") 13526, dated 29 December 2009 (75 Fed. Reg. 707). It is my

1

responsibility to assert the FOIA exemptions over NSA information in the course of litigation. Through the exercise of my official duties, I have become familiar with the current litigation arising out of a request for information filed by Plaintiff.

3.   The purpose of this declaration is to explain to the Court that NSA cannot acknowledge the existence or nonexistence of intelligence information as requested by the Plaintiff, as set forth below, because it is properly exempt from disclosure under the FOIA based upon Exemptions 1 and 3 (5 U.S.C. § 552(b)(l) and (3), respectively). This is so because such a positive or negative response would reveal information that is currently and properly classified in accordance with E.O. 13526 and protected from release by statutes, specifically Section 6 of the National Security Agency Act of 1959 (Pub. L. No. 86-36, codified at 50 U.S.C. § 3605), 18 U.S.C. § 798, and Section 102(A)(i)(1) of the Intelligence Reform and Prevention Act of 2004 (codified at 50 U.S.C. § 3024).

## ORIGIN AND MISSION OF NSA

4.   The NSA was established by Presidential Directive in October 1952 as a separately-organized agency within the Department of Defense under the direction, authority, and control of the Secretary of Defense. NSA's foreign intelligence mission includes the responsibility to collect, process, analyze, produce, and disseminate signals intelligence ("SIGINT") information, of which communications intelligence ("COMINT") is a significant subset, for (a) national foreign intelligence purposes, (b) counterintelligence purposes, and (c) the support of military operations. *See* E.O. 12333, section 1.7(c), as amended.

5.   In performing its SIGINT mission, NSA exploits foreign electromagnetic signals to obtain intelligence information necessary to the national defense, national security, or the

2

conduct of foreign affairs. NSA has developed a sophisticated worldwide SIGINT collection network that acquires foreign and international electronic communications. The technological infrastructure that supports NSA's foreign intelligence information collection network has taken years to develop at a cost of billions of dollars and significant human effort. It relies on sophisticated collection and processing technology.

## IMPORTANCE OF SIGINT TO THE NATIONAL SECURITY

6. There are two primary reasons for gathering and analyzing intelligence information. The first, and most important, is to gain the information required to direct U.S. resources as necessary to counter threats to the nation and its allies. The second reason is to obtain the information necessary to direct the foreign policy of the United States. Foreign intelligence information provided by the NSA is routinely distributed to a wide variety of senior Government officials, including the President; the President's National Security Advisor; the Director of National Intelligence; the Secretaries of Defense, State, Treasury, and Commerce; U.S. ambassadors serving in posts abroad; the Joint Chiefs of Staff; and the Unified and Specified Commanders. In addition, SIGINT information is disseminated to numerous agencies and departments, including, among others, the Central Intelligence Agency; the Federal Bureau of Investigation; the Drug Enforcement Administration; the Departments of the Army, Navy, and Air Force; and various intelligence components of the Department of Defense. Information provided by NSA is relevant to a wide range of important issues, including, but not limited to, military order of battle, threat warnings and readiness, arms proliferation, terrorism, and foreign aspects of international narcotics and trafficking. This information is often critical to the formulation of U.S. foreign

3

policy and the support of U.S. military operations around the world.   Moreover, intelligence produced by NSA is often unobtainable by other means.

7.   NSA's ability to produce SIGINT depends on its access to foreign signals. Further, SIGINT capabilities are both expensive and fragile.  Public disclosure of either the capability to collect specific signals or the substance of the SIGINT information itself can easily alert foreign adversaries to the vulnerability of their signals.

8.   The subset of SIGINT information obtained from intercepted foreign communications is called communications intelligence ("COMINT").  A fundamental tenet of the COMINT process is that the identity of specific communicants whose communications are intercepted (commonly referred to as "targets"), the degree of success in exploiting these targets, and the vulnerability of particular foreign communications are all matters that must be maintained in strictest secrecy because of the fragility of the ability to exploit foreign communications. Disclosure of even a single intercepted communication holds the potential to reveal the intelligence collection techniques that are applied against targets around the world. Once alerted, COMINT targets may change the way they communicate, which could inhibit access to the target's communications and, therefore, deny the United States access to information crucial to the defense of the United States both at home and abroad.  If a target is successful in defeating an intercept operation, all of the intelligence from that source is lost unless and until NSA can establish new and equivalent exploitation of that target's signals. If a source becomes unavailable, the military, national policymakers, combatant commanders, and the Intelligence Community ("IC") must operate without the information the communications provided.  Such losses are extremely harmful to the national security of the United States.

4

9.  Congress has specifically recognized the inherent sensitivity of the SIGINT activities of the NSA; thus, Congress has passed statutes to protect the fragile nature of NSA's SIGINT efforts.  These statutes recognize the vulnerability of signals intelligence to countermeasures of a foreign power or terrorist party and the significance of the loss of valuable foreign intelligence information to national policymakers, combatant commanders, and the IC.  These statutes are: Section 6 of the National Security Act of 1959 (codified at 50 U.S.C. § 3605); Section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act of 2004 (codified at 50 U.S.C. § 3024); and 18 U.S.C. § 798.  Under these three statutes, NSA is specifically authorized to protect certain information concerning its activities and its intelligence sources and methods from public disclosure.

## PLAINTIFF'S FOIA REQUEST

10. In a letter dated December 2, 2013, Paul Ryan Barous (hereinafter "Plaintiff") submitted a FOIA request to the NSA seeking "any and all records involving me Paul Ryan Barous/Paul Barous." *See* Exhibit A.

11. NSA's Chief of the FOIA/Privacy Act Office, Pamela Phillips, responded by letter dated December 9, 2013, wherein she explained that NSA could not acknowledge the existence or non-existence of intelligence records responsive to Plaintiff's request because such information would reveal a currently and properly classified matter, and therefore, she was denying his request pursuant to the first and third exemptions of the FOIA. *See* Exhibit B.

12. Plaintiff appealed Ms. Phillips' decision by undated letter received by the NSA FOIA Office on January 9, 2014. *See* Exhibit C. NSA's Chief of Staff, Elizabeth Brooks, responded to of Plaintiff's appeal on February 19, 2014, and advised Plaintiff that the Agency had determined

that "the appropriate response is to continue to neither confirm nor deny the existence or nonexistence of any intelligence material on [Plaintiff] pertaining to any NSA/CSS intelligence programs or activities ...." *See* Exhibit D.

13. On May 2, 2014, Plaintiff filed the instant lawsuit.

## NSA'S GLOMAR DETERMINATION

14. Plaintiff seeks records regarding a specific individual, namely himself. NSA's only response to such a request is to state that it cannot confirm publicly in any particular case whether or not any communications were collected or, conversely, that no such collection occurred.[1]



15. Based on my position as the Associate Director for Policy and Records, the Agency official responsible for the processing of all requests made pursuant to FOIA, I am confident that NSA's determination that it could not acknowledge the existence or non-existence of intelligence information on Plaintiff was proper because a positive or negative response to this request would reveal information that is currently and properly classified in accordance with Executive Order ("E.O.") 13526 and is protected from disclosure by statute.

*needs to see Top Secret*

## TARGETING INFORMATION IS CLASSIFIED AND THUS FALLS UNDER FOIA EXEMPTION 1

16. Section 552(b)(1) of the FOIA provides that the FOIA does not require the release of matters that are specifically authorized - under criteria established by an Executive Order - to be kept secret in the interest of the national defense or foreign policy and are in fact properly

---

[1] A decision neither to confirm nor deny the existence of information requested pursuant to the FOIA is commonly known as a "Glomar" response in reference to the subject of a FOIA request for records pertaining to a ship, the "Hughes Glomar Explorer." *See Phillipi v. Cent. Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976). In such cases, NSA does not conduct a search for responsive records. Conducting a search for records is inappropriate and unnecessary because regardless of the search results, the requester will be informed that the existence or non existence of the requested records can neither be confirmed nor denied.

6

classified pursuant to such Executive Order. The current Executive Order that establishes such criteria is E.O. 13526.

17. Section 1.4 of E.O. 13526 provides that information shall not be considered for classification unless it falls within one (or more) of eight specifically enumerated categories of information. The categories of classified information at issue here are those found in Section 1.4(c), which includes intelligence activities (including covert action), intelligence sources and methods, or cryptology, and Section 1.4(g), which includes vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security. Acknowledgment of the existence or non-existence of intelligence information referencing Plaintiff would reveal information that is currently and properly classified as set forth in Section 1.4(c) of E.O. 13526.

18. Acknowledging the existence or non-existence of responsive records would disclose information that is currently and properly classified TOP SECRET pursuant to Section 1.2(a)(1) of E.O. 13526 because such a positive or negative response reasonably could be expected to cause exceptionally grave damage to the national security. Any disclosure of this information would obviously and immediately affect the ability of NSA to counter threats to the national security of the United States.

19. Acknowledging the existence or non-existence of responsive records on particular individuals or organizations subject to surveillance would provide our adversaries with critical information about the capabilities and limitations of the NSA, such as the types of communications that may be susceptible to NSA detection. Confirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in

7

collecting foreign intelligence information on their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods.  For example, if NSA were to admit publicly in response to a FOIA request that no information about Persons X or Y exists, but in response to a separate FOIA request about Person Z state only that no response could be made, this would give rise to the inference that Person Z is or has been a target. Over time, the accumulation of these inferences would disclose the targets and capabilities, and therefore the sources and methods, of NSA's SIGINT activities and functions and inform our adversaries of the degree to which NSA is aware of some of their operatives or can successfully exploit particular communications.

20. NSA cannot respond to each case in isolation, but must assume that our adversaries may examine all released information together. This compilation of information, if disclosed, could reasonably be expected to cause exceptionally grave and irreparable damage to the national security by providing our adversaries a road map that instructs them which communication modes or personnel remain safe or are successfully defeating NSA's capabilities. Our adversaries could exploit this information in order to conduct their activities more securely, to the detriment of the national security of the United States.

21. For these reasons, the fact of the existence or non-existence of the information concerning the specific targeting of individuals/organizations is a currently and properly classified matter in accordance with E.O. 13526, and thus Plaintiff's FOIA request is properly denied pursuant to FOIA Exemption 1. *See People for the Am. Way Found. v. Nat'l Sec. Agency,* 462 F. Supp. 2d 21, 27 (D.D.C. 2006).

8

## TARGETING INFORMATION IS PROTECTED FROM DISCLOSURE
## BY STATUTE AND THUS FALLS UNDER FOIA EXEMPTION 3

22. Section 552(b)(3) of the FOIA provides that the FOIA does not require the disclosure of matters that are specifically exempted from disclosure by statute, provided that such statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matters to be withheld. *See* 5 U.S.C. § 552(b)(3). Review of the application of Exemption 3 statutes consists solely of determining that the statute relied upon qualifies as an Exemption 3 statute and that the information withheld falls within the scope of the statute.

23. The information at issue here falls squarely within the scope of several statutes. Information about NSA's SIGINT efforts directly relates to the Agency's core functions and activities and to intelligence sources and methods. As described above, Congress enacted three statutes to protect the fragile nature of NSA's SIGINT efforts, including but not limited to, the existence and extent of signals intelligence-related successes, weaknesses, and exploitation techniques. These statutes recognize the vulnerability of signals intelligence to countermeasures and the significance of the loss of valuable intelligence information to national policymakers, combatant commanders, and the IC.

24. The first of these statutes is a statutory privilege unique to NSA. NSA's statutory privilege is set forth in Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605. Section 6 of the NSA Act provides that **"[n]othing in this chapter or any other law ... shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, ...."** (emphasis added). By this language, Congress expressed its finding that disclosure of any information

9

relating to NSA activities is potentially harmful.  The courts have held that the protection provided by this statute is, by its very terms, absolute.  *See, e.g., Linder v. Nat'l Sec. Agency*, 94 F.3d 693 (D.C. Cir. 1996).  Section 6 states unequivocally that, notwithstanding any other law, including the FOIA, NSA cannot be compelled to disclose any information with respect to its activities. *See Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1390 (D.C. Cir. 1979); *see also Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009); *Students Against Genocide v. Dep't of State*, 257 F.3d 828 (D.C. Cir. 2001); *People for the American Way Found. v. Nat'l Sec. Agency*, 462 F. Supp. 2d 21, 30 (D.D.C. 2006).  Further, while in this case the harm would be exceptionally grave, NSA is not required to demonstrate specific harm to national security when invoking this statutory privilege; rather, NSA need only to show that the information relates to its activities. *Larson*, 565 F.3d at 868.  To invoke this privilege, NSA must demonstrate only that the information it seeks to protect falls within the scope of Section 6.  NSA's functions and activities are therefore protected from disclosure regardless of whether or not the information is classified.

25. The second applicable statute is 18 U.S.C. § 798. This statute prohibits the unauthorized disclosure of classified information: (i) concerning the communications intelligence activities of the United States, or (ii) obtained by the process of communications intelligence derived from the communications of any foreign government. The term "communication intelligence," as defined by Section 798, means the "procedures and methods used in the interception of communications and the obtaining of information from such communications by other than the intended recipients."

10

26. The third applicable statue is Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024, which states that "[t]he Director of National Intelligence shall protect the intelligence sources and methods from unauthorized disclosure." NSA, as a member agency of the U.S. IC, must also protect intelligence sources and methods. Like the protection afforded to core NSA activities by Section 6 of the NSA Act of 1959, the protection afforded to intelligence sources and methods is absolute. *See Cent. Intelligence Agency v. Sims,* 471 U.S. 159 (1985). Whether the sources and methods at issue are classified is irrelevant for purposes of the protection afforded by 50 U.S.C. § 3024. *Id.*

27. Given that Congress specifically prohibited the disclosure of information related to NSA's functions and activities and its communications intelligence activities, as well as the sources and methods used by the IC as a whole, I have determined that NSA's SIGINT activities and functions, and its intelligence sources and methods, would be revealed if NSA confirmed or denied the existence of information responsive to Plaintiff's FOIA request seeking intelligence information on himself.

11

28. I declare under penalty of perjury that the foregoing is true and correct.

Executed this _8th_ day of June, 2015, pursuant to 28 U.S.C. § 1746.

_David J. Sherman_

DR. DAVID J. SHERMAN
Associate Director for Policy and Records,
National Security Agency

12



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

IN THE MATTER OF                    )    GENERAL ORDER NO. 12-02
                                    )
DIRECT ASSIGNMENT OF                )    (Supersedes General Order No. 11-06)
CIVIL CASES TO                      )
MAGISTRATE JUDGES                   )
                                    )
_____)

      **1.**    **IT IS ORDERED** that every full-time magistrate judge who has completed thirty-six months of service with the Court and maintains his or her regular caseload as determined by the Court shall be included in the pool of judicial officers available for random selection as the assigned judge for all civil cases, except in those cases excluded below.  A full-time magistrate judge without thirty-six months of service who maintains his or her caseload as determined by the Court may volunteer to be included in the pool of judicial officers available for random selection.

      2.    Except in the categories of cases described below, each eligible magistrate judge shall be randomly assigned two civil cases each month, and no district judge will be assigned to those cases, except as provided hereafter.  A magistrate judge may volunteer to be assigned more than two cases each month.

      3.    Cases Excluded.  The following categories of cases are excluded from direct assignment to magistrate judges:  class actions, death penalty habeas

1

General Order No. 12-02

corpus petitions, bankruptcy appeals or bankruptcy withdrawal of reference cases, cases referred to a magistrate judge for a Report and Recommendation under General Order 05-07 (as amended by General Order 06-01) or any successor General Order, and cases in which a request for a temporary restraining order or motion for preliminary injunction is presented when the action is initiated.

4.   Clerk's Notice and Consent Form.   When a case is randomly assigned to a magistrate judge, the Clerk shall provide a Notice and Consent Form to the plaintiff or removing party, who must serve the Notice and Consent Form on each party at the time of service of the summons and complaint or other initial pleading. The Notice shall instruct the parties, if they agree to a magistrate judge's exercise of jurisdiction over the case, to file a joint statement or separate statements of consent. A separate statement of consent must be filed by newly-added parties, setting forth such an election, in order for the magistrate judge to retain civil trial jurisdiction. The Notice shall advise the parties that they are free to withhold consent without adverse substantive consequences.   The parties shall file the statement(s) of consent no later than the time provided in the Local Rules of this court.

5.   Magistrate Judge Serves as Judge For All Purposes. The assigned magistrate judge initially shall be responsible for all case management and scheduling activities and shall decide all non-dispositive pretrial and discovery matters.   If all parties consent in writing to the magistrate judge's exercise of civil trial jurisdiction, the case shall remain assigned to the magistrate judge for all purposes, including trial and entry of final judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Appeal from a final judgment entered at a magistrate judge's direction may be taken to the court of appeals as would any other appeal from a district court judgment.

6.   Reassignment of Case.   A case initially assigned to a magistrate judge pursuant to this Order shall be randomly reassigned to a district judge if a party

2

General Order No. 12-02

has not consented to the exercise of jurisdiction by the magistrate judge within the time required by the Local Rules. A magistrate judge shall be randomly assigned to the reassigned case as the discovery judge.

7.     If, prior to the statement(s) of consent being filed, a party files a motion or application that the magistrate judge determines is a motion for review under L.R. 72-2.1, the motion shall be determined by the Chief District Judge or shall be randomly assigned to a district judge for determination.

8.     If, prior to the statement(s) of consent being filed, a party files a motion or application that the magistrate judge concludes he or she lacks authority to rule upon, and, in the magistrate judge's view, the motion or application may require immediate judicial attention, the motion or application shall be determined by the Chief District Judge or shall be randomly assigned to a district judge for determination.

9.     If, prior to the statement(s) of consent being filed, a magistrate judge has issued an order to show cause why the case should not be dismissed or remanded or why a default judgment should not be entered, and the time for response to the Order to Show Cause has expired, the determination of whether the case should be dismissed or remanded or a default should be entered shall be made by the Chief District Judge or the matter shall be randomly assigned to a district judge for resolution. If the district judge does not dismiss or remand the case or enter judgment by default, the case shall remain with the magistrate judge for further proceedings consistent with this General Order and the Local Rules.

//

//

//

//

//

General Order No. 12-02

      10.    This General Order shall be effective upon filing by the Clerk. The program governed by this General Order shall be reviewed two years after April 20, 2011.

      IT IS SO ORDERED.

_Audrey B. Collins_

_____

CHIEF UNITED STATES DISTRICT JUDGE

Date of Approval by the Court:      March 23, 2012

Date of Filing by the Clerk:      April 6, 2012

4

Original

Paul Ryan Barous – Pro Per/Se                                  11/28/2018
98 Central St
Andover Ma. 01810
Plaintiff

**VIA OVERNIGHT MAIL**
To: First Street US Courthouse
350 W. 1st Street, Suite 4311
Los Angeles, Ca. 90012-4565
Attn: Clerks Office –Clerk of Court – Kiry Gray

Hello Clerk Of Court / Clerks Office

Enclosed is Plaintiffs Complaint and Request for Injunction including:
Original Civil Cover Sheet and 2 copies, Original Summons and 2 copies,
Original Certificate and Notice of Interested Parties Regarding Pecuniary
Interests and 3 copies. Declaration and Proof of Service. The original of
the whole document and the required copy both blue-backed. A USPS
$400 money order for the filing fee and a self - addressed envelope, if
needed. Enclosures as well:

EXHIBIT A – Issued patent (legal happening date), EXHIBIT B – Related
cases notice and discloser (affidavit from David Sherman of the NSA,
stating Top Secret and Covert), EXHIBIT C – Notice and discloser of GO
12-02 – Direct Assignment of Civil Cases to Magistrate Judges.

Plaintiff, Pro Per has tried to follow the instructions while disclosing initial
key evidence; so the Court and defendants counsel can see the whole true
picture up front. If there is any problem that I must fix; please reach out
and I will get it done.

**Dated**
11/28/2018

**Respectfully Submitted by:**

Paul Ryan Barous – Pro Per/Se
98 Central Street
Andover, Ma. 01810
949-338-5039 / rrssolution@earthlink.net

